IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERNON SIMS, | * |
| v. | * Civil No. JKS-09-3195 |
| MICHAEL J. ASTRUE<br>Commissioner of Social Security | * |

## MEMORANDUM OPINION

Plaintiff Vernon Sims brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for supplemental security income (SSI) under the Social Security Act (the Act). Both parties' motions for summary judgment and Sims' alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Sims' motions for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.

1. **Background.**

Sims applied for SSI on March 31, 2007, alleging an onset of disability on March 31, 2007. His application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on June 26, 2008, at which Sims was represented by counsel. On September 9, 2008, the ALJ found that Sims was not disabled within the meaning of the Act, (R. 9), and on October 5, 2009, the Appeals Council denied his request for review. (R. 4). Thus, the ALJ's determination became the Commissioner's final decision.

2. **ALJ's Decision.**

The ALJ evaluated Sims' claim using the five-step sequential process set forth in 29 C.F.R. § 404.1520. First, the ALJ determined that Sims has not engaged in substantial gainful

activity since the application date. At step two, the ALJ concluded that Sims suffers from necrosis of both hips and a left hand fracture. (R. 14). At step three, the ALJ determined that Sims does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). At step four, the ALJ found that Sims had the Residual Functional Capacity (RFC) to perform light unskilled work with a sit/stand option and limited dominant hand usage. (R. 14). Once determining that Sims was unable to perform past relevant work, the ALJ found at step five, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that Sims can perform. (R. 17). As a result, the ALJ determined that Sims was not disabled within the meaning of the Act. (R. 18).

3. **Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. Discussion.**

Sims poses four allegations of error. He claims that the ALJ erred: in failing to give controlling weight to the opinion of his treating physician, Dr. Schoengold; in finding his testimony not credible; and in finding that jobs exist in significant numbers in the national economy that he can perform. Sims also claims that the Appeals Council erred in not granting review based on the March 2009 MRI.

   A. The ALJ properly evaluated the opinion of Dr. Schoengold.

Sims claims that the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Schoengold. An ALJ must always consider the medical opinions in a claimant's case record together with the rest of the relevant evidence that is received. 20 C.F.R. § 416.927(b). While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

First, Dr. Schoengold is not a treating physician. "A treating physician is a medical professional that examines a patient on several occasions over a long period of time." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 648 (D. Md. 1999). The opinion of a treating physician is entitled to more weight because "he has seen the patient a number of times and long enough to obtain a longitudinal picture of [the patient's] impairment." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)); *see also Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986) ("[T]he opinion of a treating physician is entitled to more weight because it reflects a judgment based on a continuing observation over a number of years."). Although Sims alleges that Dr. Schoengold saw him six times, four of the appointments were rescheduled or canceled, and Dr. Schoengold only saw

Sims twice, over an eight month period. (R. 167–68). Two visits over an eight month period are not sufficient for Dr. Schoengold to develop a longitudinal picture of Sims' impairment. *See Ketcher*, 68 F. Supp. 2d at 649 (finding the claimant's doctor a treating physician because he had seen the claimant numerous times over a three year period).

Even if Dr. Schoengold were a treating physician, the ALJ properly evaluated his opinions. A treating physician's opinion is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R § 416.927(d)(2); Social Security Ruling (SSR) 96-2p, 1996 WL 374188. Dr. Schoengold's findings are inconsistent with substantial evidence in the record.

First, the ALJ noted that Dr. Schoengold's opinion that Sims had a total restriction on driving, (R. 175), was not supported by Sims' testimony that he drives every now and then. (R. 17, 216). Dr. Schoengold also reported that Sims could not stand, walk, or lift anything, (R. 172-73), but Sims reported that he prepares meals, does laundry, and shops, (R. 217), and Dr. Suresh Gupta found that Sims was able to sit, stand, walk, lift, and carry, handle objects, hear, speak, and travel. (R. 15, 159). Dr. Gupta also found no significant restriction in range of motion of any joints, and no sensory, motor, or reflex abnormalities. (R. 15, 159–60). The ALJ properly gave Dr. Gupta's opinions substantial weight because his opinions were consistent with those of state physicians Drs. Moore and Nakhuda. (R. 17).

Sims, however, argues that the ALJ should have given no weight to the evaluations of the state physicians, Drs. Nakhuda and Moore, which occurred before the November 23, 2007, x-ray, before the functional capacity evaluation performed by Dr. Schoengold, and before the March 4, 2009, MRI. The ALJ, however, aware of the dates of the evaluations, considered them

4

in conjunction with the rest of the medical evidence.  In addition, substantial medical evidence existed in the record at the time of these evaluations.  (R. 31).  Accordingly, the ALJ properly considered them.

The ALJ further found Sims' daily activities and treatment history inconsistent with someone who suffers from disabling symptoms and limitations.  (R. 16).  Sims testified that he rides for long periods with his uncle, drives every now and then, cooks for himself, does his own laundry, and buys groceries.  (R. 215–17).  The ALJ described Sims' treatment regimen as "essentially routine and/or conservative in nature."  (R. 16).  Sims occasionally complained of hip pain from 2002 through 2004, but did not see a doctor again until 2007, when he saw Dr. Schoengold only twice.  (R. 167–68).  The ALJ also noted that "although [Sims] took the appropriate medications, the dosage level suggests the symptoms are not particularly serious." (R. 16).  Finally, the ALJ found Sims' testimony and his overall appearance and demeanor unpersuasive and not consistent with a person who had a disabling impairment, and also noted that Sims did not stop working because of his alleged disabling impairment, but because of a business-related layoff.  (R. 16-17).   In sum, the ALJ properly determined that Dr. Schoengold's opinion was inconsistent with substantial evidence in the record.

B.  The ALJ did not err in assessing Sims' credibility.

Sims argues that the ALJ misstated the record, improperly discredited his medical history, incorrectly found his testimony inconsistent and unpersuasive, and failed to adequately explain why his appearance and demeanor was unpersuasive.  Because the ALJ had the opportunity to observe the demeanor of witnesses, his credibility findings are entitled to substantial deference.  *Sayre v. Chater*, 113 F.3d 1232, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (citing *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1995)); *Shively v. Heckler*, 739 F.2d

5

987, 989–90 (4th Cir. 1984).

Sims first argues that his uncle drives for him because of his pain and that his cooking is limited to placing items in the microwave. At the hearing, however, Sims testified that he drives "every now and then." (R. 216). In his functional report, Sims stated that he cooks for himself, including pork chops and eggs, does laundry and mows the grass when he is not in pain. (R. 46).

Sims next argues that his medical treatment was consistent with his diagnosis. Sims received essentially routine and conservative treatment, with gaps of several years between visits to physicians. (R. 16, 167–68). Inconsistently, he also alleges that he received only occasional treatment because of his poverty and lack of medical insurance, but the record shows that even while incarcerated, with access to medical care, he rarely sought treatment, and when he did, was treated with over-the-counter medication and other conservative measures. (R. 73–121, 177–97).

Finally, Sims argues that the ALJ's assertion that his testimony was "generally unpersuasive" is vague and conclusory. However, the ALJ had the opportunity to view Sims' appearance and demeanor during the hearing and, as a result, the credibility determination is entitled to substantial deference. *Sayre*, 1997 WL 232305, at *1 (citing *Barker*, 40 F.3d at 795). Here, the ALJ properly considered his observations in conjunction with the medical evidence in reaching the conclusion that Sims had an RFC "to perform light unskilled work with a sit/stand option and limited dominant hand usage." (R. 14, 220–24).

C. The ALJ correctly found that Sims is able to perform jobs that exist in significant numbers in the national economy.

Sims next argues that the hypothetical posed to the VE by the ALJ did not include the limitations and restrictions that affect him. The ALJ's hypothetical question to the VE must include all of the claimant's impairments. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The question, however, must include only those limitations that the ALJ deems credible. *See*

*English v. Shalala,* 10 F.3d 1080, 1085 (4th Cir. 1993). Here, the ALJ asked the VE whether jobs existed in the national economy for a hypothetical person who has the same age, education, and work experience as Sims, and who has the capacity to do light work, unskilled, with a sit/stand option and limited dominant hand usage. (R. 227). The VE found that this hypothetical person could perform the jobs of machine tender, general clerical worker, and unarmed security worker. (R. 227).

Sims argues that the ALJ excluded the significant limitations and restrictions found by Dr. Schoengold. The ALJ, however, did not accept these limitations, and as a result, was not required to include them in the question to the VE.

   D. The Appeals Council properly evaluated the March 2009 MRI.

The Appeals Council is only required to consider additional evidence "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Secretary, Dep't of Health & Human Serv.*, 953 F.2d 93, 95–96 (4th Cir. 1991); *see* 20 C.F.R. § 404.970(b). Evidence is new if it is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.*; 20 C.F.R. § 404.970(b).

Here, the Appeals Council received the March 2009 MRI and incorporated it into the record. (R. 7). Sims argues that the Appeals Council is required to articulate its assessment of the March 2009 MRI. Automatic remand, however, is not required where the Appeals Council does not explain its evaluation of new evidence. *See Waters v. Astrue*, 495 F. Supp. 2d 512, 514-–15.

Sims argues that the MRI is the first documentation of the severity his right hip problems.

7

Specifically, he argues that this MRI shows that his right hip suffers from severe joint space narrowing, severe degenerative changes, cystic degenerative changes, a chip fracture, and severe osteoarthritis. However, Sims had previously been diagnosed with right hip degenerative joint disease with loss of joint space. (R. 94, 170). The ALJ's decision, as noted, also is supported by Dr. Gupta's examination, Drs. Moore and Nakhuda's examinations, Sims' admitted daily activities, and Sims' infrequent and conservative treatment. Accordingly, there is no basis for concluding that the 2009 MRI would bring about a different result.

**5. Conclusion.**

For the foregoing reasons, Sims' motions for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.


Date: March 29, 2011                              /S/
                                        JILLYN K. SCHULZE
                                        United States Magistrate Judge